```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                                                    :
Alba Garcia,                                                        :
                                                                    :
                                    Plaintiff,                      :      1:20-CV-10858-ALC
                                                                    :
                          -against-                                 :      ORDER
                                                                    :
Pritchard Industries, LLC,                                          :
                                                                    :
                                    Defendant.                      :
                                                                    :
------------------------------------------------------------------- x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: March 18, 2022

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Alba Garcia ("Garcia" or "Plaintiff"), proceeding *pro se*, brings this action against her former employers, Defendants Pritchard Industries LLC and Macquarie Group ("Defendants"), asserting claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for discrimination based on race, sex, and national origin, and 42 U.S.C § 1981. Defendants move to dismiss on two grounds: (1) Plaintiff's claims are subject to mandatory arbitration pursuant to the Collective Bargaining Agreement ("CBA"), and (2) failure to exhaust administrative remedies. Because the first ground for dismissal asserts that Plaintiff is subject to binding arbitration, the Court construes that portion of the motion as a motion to compel arbitration. For the reasons discussed below, the motion is **GRANTED IN PART and DENIED IN PART.**

## FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1] The facts are taken from the complaint filed on December 22, 2020. *See* ECF No. 2. At the motion to dismiss stage, courts accept as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017). The Court incorporates any factual allegations in Plaintiff's opposition brief into the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). With respect to the motion to seeking to compel arbitration, the Court examines the pleadings alongside documents proffered by Defendants and, where the documentary evidence contradicts factual allegations in the complaint, the Court deems those allegations implausible. The background section is limited to those facts relevant to deciding this motion.

Plaintiff Alba Garcia is a Hispanic female of Colombian origin who worked as a cleaner for Defendant Pritchard Industries LLC ("Pritchard") from 1997 to 2017. Her position required that she be assigned to different office locations. Her last assignment was with Defendant The Macquarie Group ("Macquarie"). She avers that Defendants discriminated against her on the basis of race, sex, and national origin during her tenure. For instance, from 2000 to 2003, three different Pritchard supervisors—Willie Castro, Adrian,[2] and Gregory Marotivo—allegedly sexually assaulted Garcia on separate occasions. In late 2013, she was denied a position at a particular facility despite her seniority. Compl. ¶ 9. In or about early 2014, she alleges that supervisors targeted and abused her for being a non-Albanian woman. On or about October 3, 2017, she was suspended. Shortly thereafter, she was terminated.

### A. The Collective Bargaining Agreement (CBA)

Defendants assert that the Parties set forth a specific private dispute resolution process for employment discrimination claims under the Collective Bargaining Agreement (CBA). The No Discrimination Clause reads:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, 42 U.S.C. [insert section symbol] 1981, the Age Discrimination in Employment At, the Family and Medical Leave Act, the New York State Human Rights Law, the New York City Human Rights Code, New Jersey Law Against Discrimination, New Jersey Conscientious Employee Protection Act, Connecticut Fair Employer Practices Act, or any other similar laws, rules or regulations. **All such claims shall be subject to the grievance and arbitration procedure (Article V and VI) as the sole and exclusive remedy for violations.** Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

---

[2] Plaintiff asserted in the complaint that she was unable to recall the last name of this individual.

Mike Gjokaj Affidavit, Ex. A (CBA, Section 30(A)) (emphasis added). It also outlines the Protocol for handling discrimination claims, which stipulates as follows:

> The parties to this Agreement, the Union and RAB, believe that it is in the best interests of all involved – employees, members of the Union, employers, the Union, the RAB, and the public interest – to promptly, fairly, and efficiently resolve claims of workplace discrimination, harassment and retaliation as covered in the No Discrimination Clause of the relevant collective bargaining agreement (collectively, "Covered Claims"). Such Covered Claims are very often intertwined with other contractual disputes under this Agreement. The RAB, on behalf of its members, maintains that it is committed to refrain from unlawful discrimination, harassment and retaliation. The Union maintains it will pursue its policy of evaluating such Covered Claims and bringing those Covered Claims to arbitration where appropriate. To this end, the parties establish the following system of mediation and arbitration applicable to all such Covered Claims, whenever they arise. The Union and RAB want those covered by this Agreement and any individual attorneys representing them to be aware of this Protocol.

*Id.* (CBA, Section 30(B)(1)). The Protocol then details the mediation and arbitration process, which specifically covers discrimination claims. *Id.* (CBA, Section 30(B)(2)-(B)(3)). In relevant part, where the Union has:

> . . . declined to arbitrate an employee's individual employment discrimination claim under the No Discrimination Clause of the CBA, including statutory claims (i.e., a Covered Claim), to arbitration. The arbitration forum described [in the Agreement] will be available to employers and employees, both those who are represented by counsel and those who are not represented by counsel.

*Id.* (CBA, Section (B)(3)(a)). Where the complaining union member seeks to bypass the Discrimination Protocol and proceed to bring Covered Claims in any court,

> [I]t is a mandatory prerequisite before any bargaining unit member attempts to file a Covered Claim in any court that the bargaining unit member (personally or through the bargaining unit member's attorney) notify in writing the RAB and the Employer that the Employee is attempting to bypass the Protocol process" and "shall specify the Covered Claim(s) alleged with sufficient detail, the court where the action is to be filed, and the reason(s) for attempting to bypass the Protocol process.

*Id.* (CBA, Section 30(B)(4)(a)).

**B. Indefinite Suspension Grievance**

3

Plaintiff filed a grievance about her "indefinite suspension" on or about October 4, 2017. Compl. ¶ 34. The grievance went to arbitration, and witnesses testified during the proceedings at least through May 5, 2019. *Id.* ¶¶ 34-39. On July 10, 2019, Arbitrator David J. Reilly, Esq. issued an unfavorable decision, finding that Defendants had "just cause" to discharge Garcia due to her prior disciplinary record and an unabated pattern of misconduct. Gjokaj Aff., Ex. C (Arbitration Opinion & Award). Notably, the written decision did not address any allegations of discrimination or retaliation against Defendants or their agents or employees. The emphasis there was on workplace misconduct alleged against Plaintiff.

### C. Discrimination Grievance

On January 23, 2018, Garcia received notice from her union that they would not pursue her discrimination-based grievance against Pritchard through arbitration but stated that she had the right to pursue the claims on her own. Gjokaj Aff., Ex. B.[3] The letter further instructed that the first step was to invoke the mediation process by contacting the Office of the Contract Arbitrator (OCA). *Id.* Garcia does not allege that she ever invoked the mediation process or otherwise proceeded with arbitration on her own regarding her discrimination grievance.

### D. Administrative Proceedings Below

On March 29, 2018, Garcia filed a verified complaint with the New York State Department of Human Rights (DHR) charging Pritchard and Macquarie with discrimination based on race/color and opposed discrimination/retaliation. On April 3, 2018, the DHR issued a notice of charge of discrimination and indicated that the charge was sent to the U.S. Equal Employment Opportunity Commission (EEOC) for dual filing purposes. Gjokaj Aff., Ex. E. On

---

[3] The exact date of filing of her discrimination grievance is unknown. The Complaint does not provide any date. However, the Court draws the reasonable inference that she filed such grievance between October 4, 2017 (date of indefinite suspension) and January 23, 2018 (date of letter from union).

September 19, 2018, after investigation and by final determination, the DHR dismissed her charge and closed her file. Gjokaj Aff., Ex. G at 6. The final determination stated that Plaintiff could seek EEOC review within 15 days and, absent a request for review, the EEOC "will generally adopt [the DHR's] action in your case." *Id*. Upon dismissal, Garcia stated that she "felt as though neither the NYSDHR nor her Union was giving her case attention, and, feeling defeated, did not return back to the EEOC." Pl.'s Opp. at 3. She thus admittedly did not seek EEOC review of the final determination. Plaintiff represents that she "never received [a] 2018 right to sue letter from the EEOC." *Id.*

On December 3, 2019, Garcia filed a second administrative charge with the DHR, but only against Pritchard. Gjokaj Aff., Ex. H. That complaint again alleged that she suffered discrimination based on race/color and opposed discrimination/retaliation, complained of her arbitration proceedings, reiterated allegations regarding her termination from the first charge, and asserted allegations of sexual harassment. Gjokaj Aff., Ex. D. On January 7, 2020, DHR issued a notice of charge of discrimination, which was duly filed with the EEOC. Gjokaj Aff., Ex. H at 6-7. The DHR dismissed that complaint on February 13, 2020 as untimely "because it was not filed with [DHR] within one year" after the alleged unlawful discrimination. Gjokaj Aff., Ex. I. Approximately seven months later, on September 28, 2020, the EEOC issued a Dismissal and Notice of Rights to Sue adopting the DHR's findings and stating that any federal lawsuit must be filed within 90 days. Gjokaj Aff., Ex. J. Though Plaintiff represents that she never received a Notice of Right to Sue regarding her first charge of discrimination, she states that "she believed that the 2019 right to sue letter would apply to all her previous claims." Pl.'s Opp. at 3.

Within 90 days (85 to be exact) of receipt of the right-to-sue letter, Plaintiff initiated this lawsuit on December 22, 2020. ECF No. 2. She attached a copy of the September 28, 2020

5

Notice of Dismissal and Rights to Sue to the original complaint. ECF No. 2 at 8. On March 24, 2021, Defendants moved to dismiss. ECF No. 10. After this Court granted extensions of the briefing schedule, Plaintiff opposed dismissal on June 5, 2021. ECF No. 19. On June 14, 2021, Defendants filed a reply. ECF No. 20.

## STANDARD OF REVIEW

### A. Mandatory Arbitration

When a party clearly refuses arbitration, courts must determine "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010); *accord Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

This standard reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citation omitted). That policy stands so strong, in fact, that the Second Circuit has noted that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied.'" *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir.

2006) (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)).

Because arbitration has its roots in contract law, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Accordingly, despite the "'liberal federal policy favoring arbitration agreements,' [an arbitration agreement] must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." *Id.* (citation omitted) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)).

**B. Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

As Plaintiff is proceeding *pro se*, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and "are held 'to less stringent standards than formal

pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) (internal quotation marks and citations omitted). *Pro se* litigants nonetheless are "not exempt . . . from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

## DISCUSSION

Defendants first argue that the CBA requires that Garcia's employment discrimination claims under Title VII and Section 1981 are subject to mandatory arbitration and are therefore barred. They contend that Garcia's employment discrimination claims are covered by the arbitration provisions in the CBA, that Plaintiff has not availed herself of the arbitration process regarding those claims, and that this action should therefore be dismissed. Other courts in this Circuit have held that the same or substantially similar alternative dispute resolution provisions of this CBA are applicable to discrimination claims made by covered employees. *See, e.g.*, *Germosen v. ABM Indus. Corp.*, No. 13-CV-1978 ER, 2014 WL 4211347 (S.D.N.Y. Aug. 26, 2014). This Court agrees.

The parties do not dispute the validity or enforceability of the arbitration provisions of the CBA. On a plain reading, the CBA contemplates resolution of the case by a third party specifically for discrimination claims arising under statute, including Title VII and Section 1981. The Parties' agreement evidences an intent to commit this matter to mediation and, if necessary, subsequent arbitration.

Garcia disputes the scope of the CBA, countering that this lawsuit is not covered under the arbitration provisions because she has already gone through that process with respect to her indefinite suspension. But she is incorrect. Her lawsuit is specifically contemplated by the CBA and falls within its scope. This lawsuit asserts federal claims under Title VII and Section 1981 on

8

the basis of discrimination and retaliation.[4] Her prior arbitration proceedings undoubtedly covered her claim for unjust termination, but in no way covered alleged discrimination and retaliation on the basis of race, sex, and national origin. Plaintiff concedes that those proceedings did not cover the claims she has brought before this court. Her opposition papers state, in relevant part, that:

> Ms. Garcia did go through the arbitration process . . . . The arbitration covered her termination . . . . While Ms. Garcia was not asked about her discrimination claims in the arbitration, and therefore was not given a chance to discuss them, the arbitration covered the circumstances of the termination. The court should not require that the arbitration specifically cover the discrimination claim because it did cover the facts and circumstances of Ms. Garcia's termination; this should be sufficient.

Pl.'s Opp. at 2. Moreover, the documents she attached to the complaint reflect that the arbitration proceedings solely involve her indefinite suspension—not discrimination or retaliation. Though it appears that Garcia filed a discrimination grievance at some point following her termination, on January 23, 2018, her union explicitly declined to arbitrate on her behalf. Compl. at 34. They instructed that she could still pursue the claims independently and that she could initiate the process through mediation by contacting the OCA. That Plaintiff fails to allege and even concedes that she has not pursued her discrimination claims through binding arbitration is dispositive. "If Plaintiff wishes to proceed with those claims, [she] is directed to submit to the mediation and arbitration procedures contemplated by the CBA and the Discrimination Protocol." *Germosen*, 2014 WL 4211347, at *7.

---

[4] Her Employment Discrimination Complaint form checks boxes for Title VII and Section 1981 on the basis of race, sex, and national origin. Compl. at 3–4. The Statement of Claim section of her form checks boxes for termination of employment, retaliation, harassment and a hostile work environment, and denial of her requests "to transfer to a different work site." Compl at 5. In the Relief section, she seeks reemployment, as well as compensatory and punitive damages. Compl. at 6.

When granting a motion to compel arbitration, the Second Circuit has held that outright dismissal is ordinarily not appropriate. *See Katz v. Cellco Partnership*, 794 F.3d 341, 346 (2d Cir. 2015) (holding that although "efficient docket management is often the basis for dismissing a wholly arbitrable matter," that prerogative "cannot trump a statutory mandate, like Section 3 of the FAA, that clearly removes such discretion"). Where all of Garcia's claims are arbitrable and a stay has been requested, albeit by Defendants, "the text, structure, and underlying policy of the FAA mandate a stay of proceedings." *Id.* at 347. Therefore, the request for a stay pending arbitration is **GRANTED**.

Defendants move the Court for an award of attorneys' fees and costs incurred as a result of bringing this motion. "Under the general rule in New York, 'attorneys' fees are incidents of litigation and a prevailing party may not collect them from the losing party unless such an award is authorized by agreement between the parties, statute or court rule.'" *Bonnie & Co. Fashions v. Bankers Trust Co.*, 955 F.Supp. 203, 217 (S.D.N.Y. 1997) (quoting *Bourne Co. v. MPL Communications, Inc.*, 751 F.Supp.55, 57 (S.D.N.Y. 1990)). However, "the intent to provide for counsel fees [by agreement between the parties] as damages for breach of contract must be 'unmistakably clear' in the language of the contract." *Id.* (alteration in original) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.*, 98 F.3d 13, 20–21 (2d Cir. 1996)). Defendants do not invoke any contract provision, under the CBA or some other agreement with Plaintiff, that would entitle them to an award of attorneys' fees and costs from this Court in connection with preparing this motion. They also fail to provide any case law, statute, or regulation that would authorize such an award. The request is **DENIED**.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**. This case is hereby **STAYED** pending arbitration of Plaintiff Alba Garcia's statutory discrimination claims under Title VII and Section 1981. Because this case is being referred to arbitration, the Court need not reach Defendants' arguments regarding administrative exhaustion. The Parties are directed to file joint status reports every 60 days regarding the arbitration proceedings, starting from the date this Order is issued. Defendants shall coordinate with Plaintiff to prepare the status reports and Defendants shall then timely file the status reports, on behalf of all parties, on the docket. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 10.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

**Dated**: March 18, 2022

New York, New York

                                                 **The Hon. Andrew L. Carter, Jr.**
                                                    **United States District Judge**